IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**CLARISSA OLIVER,**

    **Plaintiff,**

**vs.**         **CASE NO. 5:10-cv-307-RS-CJK**

**PHYAMERICA GOVERNMENT
SERVICES, INC.,**

    **Defendant.**

_____/

## ORDER

Before me is Defendant's motion for summary judgment (Doc. 29).

## I. STANDARD OF REVIEW

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

## II. BACKGROUND

I accept the facts in the light most favorable to Plaintiff. *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1343 n.1 (11th Cir. 2002)). " 'All reasonable doubts about the facts should be resolved in favor of the non-movant.' " *Id.* (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999); *Clemons v. Dougherty County*, 684 F.2d 1365, 1368-69 (11th Cir. 1982).

The Florida Department of Veterans' Affairs (FDVA) contracted with Defendant, PhyAmerica, a healthcare management company, to provide staffing services to Clifford Chester Simms Nursing Home (Clifford Simms), a veterans' facility located in Panama City, FL. The contract's "Statement of Work" provides a description of the parties' obligations with respect to the certified nursing

assistants (CNA) and on-site project manager. Included in this portion of the contract is a section entitled "Staffing Changes," which says:

> The provider shall replace any On-Site Manager within 30 days whose continued presence would be detrimental to the success of the project *as determined by FDVA*. In the event an employee must be removed immediately, the vendor will replace staff within 24 hours. The Facility's Quality Assurance Monitor, in consultation with the Facility Administrator, will exercise exclusive judgment in this matter.

(Doc. 29, Exhibit B, p. 39)(emphasis added). Steve Mason, an employee of FDVA, was the Facility Administrator at Clifford Simms when Plaintiff was employed. Mason was responsible for managing Defendant's contract.

Plaintiff began working for Defendant on October 8, 2007 as the on-site project manager. Plaintiff was responsible for managing a team of CNAs who assisted the Clifford Simms nurses. During the time of her employment, Plaintiff and the Facility Administrator, Steve Mason, had a tense relationship. Mason openly questioned Plaintiff's credentials and why she was hired for the job, demanded confidential information from Plaintiff, and briefly blocked Plaintiff in a room, among other things. (Doc. 1). Plaintiff reported Mason's behavior to Laurie Alves, the lead project manager for Clifford Simms.

Mason was not satisfied with Plaintiff's work as on-site project manager. Mason complained that Plaintiff "(i) used foul and abusive language toward staff members and employees, (ii) refused to speak to Clifford Simms administrative staff, often keeping her office locked and failing to answer the door, (iii) ignored

requests from Mason, (iv) accepted gifts or payments from staffing agencies, and (v) ordered PhyAmerica employees to not clock in for mandatory compensable training in violation of the FLSA." (Doc. 29, p. 6).

In November of 2007, Mason met with Pam Graff, PhyAmerica's President; Kelly Hutchinson, PhyAmerica's Vice President of Human Capital; and Paul Thomas, PhyAmerica's Senior Director of Operations, to direct them to terminate Plaintiff's employment. (Doc. 29). Mason stated that Plaintiff "had the worst attitude of any manager [he] had ever encountered in 30 years . . . ." (Doc. 29, Exhibit F, p. 10). He told the management team that Plaintiff "needed to be discharged for cause, that she was not representing PhyAmerica appropriately." (*Id.* at 12). Plaintiff was then terminated by the PhyAmerica management team.

Plaintiff now brings this suit for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964. Defendant has moved for summary judgment.

### III. ANALYSIS

Counts I (race discrimination) and II (retaliation) of Plaintiff's complaint fail for two reasons: (1) Steve Mason, the person alleged to have the racial animus, is not an agent of Defendant, and (2) there is no evidence of racial animus.

"Under Title VII, an 'employer' may be found liable for a Title VII violation upon a judicial finding 'that the [defendant] has intentionally engaged in or is

4

intentionally engaging in an unlawful employment practice charged in the complaint.'" *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1162 (11th Cir. 1993)(citing 42 U.S.C. § 2000e-5(g)). "Title VII defines a potentially liable 'employer' as any 'person engaged in an industry affecting commerce . . . and any agent of such a person.'" *Id.* Therefore, in order for Defendant to be liable for Mason's allegedly discriminatory actions, Mason must have been an agent of PhyAmerica. *See* 42 U.S.C. § 2000e(b) (2010). To determine whether an agency relationship exists, courts look to common law principles of agency. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754-55 (1998). An agent is "one who agrees to act on behalf of another subject to the other's control." *Goldsmith*, 996 F.2d at 1162.

It is quite clear from the facts that Mason was not an agent of PhyAmerica. Mason was an employee of the Florida Department of Veterans' Affairs. He was the Facility Administrator at Clifford Simms and was charged with managing the contract between FDVA and PhyAmerica. PhyAmerica had no control over Mason. Because Mason was not an agent of PhyAmerica, Defendant cannot be imputed with liability for any racial animus Mason may have had.

Plaintiff contends that Defendant is liable under the "cat's paw" theory, which imputes liability to the employer when the discriminatory animus of a supervisor was the motivating factor in the adverse employment action. *Staub v.*

*Proctor Hospital*, 131 S.Ct. 1186, 1191-92 (2011).  According to the contract as cited above, replacement of Plaintiff, the on-site manager, is within the discretion of FDVA, not PhyAmerica.  (Doc. 29, Exhibit B, p. 39).  Not only was Mason not an agent of PhyAmerica, but PhyAmerica was also not the ultimate decisionmaker in Plaintiff's termination.  Therefore, the "cat's paw" theory does not apply in this case.

In addition, even if PhyAmerica could be held liable for Mason's actions, there is no evidence that his actions were a result of racial discrimination.  To survive summary judgment, the plaintiff must provide some circumstantial evidence to create a triable issue concerning the discrimination.  *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).  "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.' "  *Id.* (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 733 (7th Cir. 2011).

In this case, Plaintiff contends that Mason:

> harshly questioned her about her credentials, verbally abused her, talked at her and not to her, stood over her, pointed his finger in her face, demanded she divulge confidential information, threatened her, imprisoned her in a room, told her he would ban her from the premises, threatened her job, barged into her office, slammed a piece of paper on her desk, and said she better do what he says.

6

(Doc. 32, p. 4). Plaintiff testified that Mason's actions were discriminatory solely because "he didn't know [her]." (Doc. 29, Exhibit C, p. 186). Plaintiff also testified that she never heard Mason use foul or racially derogatory language. (*Id.* at 189). There is simply no evidence, direct or circumstantial, to support Plaintiff's belief that Mason's actions were racially motivated. Title VII is not a "civility code" that prohibits general misconduct. *Baldwin v. Blue Cross/Blue Shield*, 480 F.3d 1287, 1301 (11th Cir. 2007)(quoting *Oncale v. Sundowner Offshore Servs., Inc.* 523 U.S. 75, 80 (1998)). Although Mason's conduct certainly was not appropriate workplace behavior, it was also not race discrimination.

## IV. CONCLUSION

Summary judgment is granted for Defendant against Plaintiff. The clerk is directed to close the case.

**ORDERED** on August 31, 2011.

**/s/ Richard Smoak**
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**
